**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Allen Simmons,<br>Plaintiff,<br>v.<br>Bank of America NA,<br>Defendant. | No. CV-25-04958-PHX-SHD<br>**ORDER** |

Pending is Defendant Bank of America, N.A.'s ("BANA") Motion to Dismiss Plaintiff Allen Simmons's First Amended Complaint ("FAC"). (Doc. 25.) The motion is fully briefed. (Docs. 26, 27.) Also pending are Simmons's Motion to Compel Production of Call Logs and Bank Records, (Doc. 28), and Motion for Sanctions, (Doc. 29). For the reasons stated below, the motion to dismiss will be **granted**, and the motions to compel and for sanctions will be **denied**.[1]

## I. BACKGROUND

On July 15, 2025, Simmons went to the Bank of America branch at 2902 N. 44th Street (the "44th Street Branch") in Phoenix, Arizona to deposit two checks, one for $50,000 and one for $38, into his existing Bank of America account. (Doc. 16 at 4.) The bank teller told Simmons that he would need an override to deposit the $50,000 check. (*Id.*)

Simmons alleges that the branch manager then refused him service. (*Id.* at 5.) The

[1] I find these motions suitable for decision without oral argument. *See* LRCiv 7.2(f).

manager kept his driver's license and threatened to call the police, though Simmons "was being a gentleman." (*Id.*) The manager directed four employees to escort Simmons out of the branch. (*Id.* at 5, 7.) Simmons alleges that the manager and a clerk spoke "a language that they speculated I would not understand for the purpose of concealing the conversation from me," and that the manager was "nasty" and "quite loud" while other customers watched. (*Id.*) Once Simmons was outside, an employee returned his license. (*Id.* at 7.)

About 30 minutes later, Simmons deposited both checks at Bank of America's branch at 4402 E. Camelback Road (the "Camelback Branch") "with no issues." (*Id.*) The funds were available the next day. (*Id.*) On July 17, 2025, two days after the incident, Simmons returned to the 44th Street Branch to withdraw $7,000. (*Id.*) The same manager "came over to [his] clerk and refused services" to him. (*Id.*) Simmons again returned to the Camelback Branch, where he withdrew the $7,000 without issue. (*Id.*)

Over the next week, BANA deleted Simmons's Zelle account, deactivated his BillPay service, placed a hold on his account, froze it, and, on July 24, 2025, closed his account. (*Id.*) Simmons alleges it is "evident" that the manager who had him removed complained to BANA's corporate office, and that the corporate office "went along with what the bank manager had reported." (*Id.*) Before these events, Simmons had a "perfect record" with BANA and no history of fraud, overdrafts, or problems with large deposits. (*Id.*) He asserts that the manager "used [his] physical characteristics and national origin to deny [him] services," and that the manager's actions had "no basis or grounds other than me Banking while Black." (*Id.* at 4, 7.) He seeks $250,000 for discrimination, harassment, and emotional distress. (*Id.* at 5.)

On December 31, 2025, Simmons sued BANA's parent, Bank of America Corporation ("BAC"), alleging violations of 42 U.S.C. § 1983. (Doc. 1.) After BAC moved to dismiss, (Doc. 9), Simmons filed the FAC naming BANA, (Docs. 16, 19). BANA now moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 25.) Simmons responded, and BANA replied. (Docs. 26, 27.)

On April 9, 2026, Simmons filed two further motions. The first seeks production

of call logs and bank records related to Simmons's account. (Doc. 28.) The second seeks sanctions against BANA for allegedly putting unnecessary holds on his payroll checks and temporarily closing his accounts while this litigation is pending. (Doc. 29.) BANA responded. (Docs. 30, 31.)

## II. MOTION TO DISMISS

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation modified)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and [ ] a recovery is very remote and unlikely." *Id.* at 556 (citation modified). Pro se filings must be construed "liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014).

### B. Section 1983

To state a § 1983 claim, a plaintiff must allege the violation of a federal right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Private parties are presumed not to be state actors. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011). To determine whether a defendant is a state actor, courts apply four tests: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Pasadena Republican Club v. W. Just. Ctr.*, 985

F.3d 1161, 1167 (9th Cir. 2021) (quotation marks omitted). "Various courts have held that the performance of bank functions do not constitute acts under color of state law within the meaning of § 1983." *Breedlove v. Wells Fargo Bank, N.A.*, 2010 WL 3000012, at *6 (D. Ariz. July 28, 2010).

Simmons does not allege state action. BANA is a private national bank, (Doc. 16 at 2), and Simmons describes only private conduct: a branch manager refusing transactions and removing a customer from the bank, and BANA later restricting and closing his account. (*Id.* at 4–5, 7.) In his response, Simmons argues that national banks are "delegated federal compliance actors" and that a manager who invokes anti-money-laundering authority to refuse service is "clothed with the authority of federal law." (Doc. 26 at 1.) This theory is not in the FAC, (*see generally* Doc. 16), but even if it were, it does not meet the state actor requirement because § 1983 reaches conduct under color of *state* law, not federal law. *See* 42 U.S.C. § 1983.

In any event, on September 9, 2026, Simmons filed a Notice of Clarification, in which he "acknowledges that Bank of America is a private corporation, not a government entity," and "clarifies that [his] lawsuit is brought pursuant to 42 U.S.C. § 1981." (Doc. 34.) Thus, Simmons concedes that his § 1983 claim fails because he has not alleged state action, and I will dismiss the § 1983 claim.

**C. Section 1981**

Construing Simmons's FAC liberally, and in light of his Notice, he appears to be seeking relief under 42 U.S.C. § 1981, which, unlike § 1983, can reach the conduct of private actors.[2] When racial discrimination impairs a contract, § 1981 entitles a plaintiff who has rights under the contract to relief. 42 U.S.C. § 1981; *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "To state a § 1981 claim against a private defendant like BANA, Simmons must allege that (1) he is a member of a racial group, (2) some contractual right with the defendant was impaired, (3) the defendant intentionally

[2] Because Simmons has now expressly invoked § 1981, (Doc. 34), I reject BANA's argument that he conceded that claim by insisting he would "remain under 1983," (Doc. 27 at 2).

discriminated against him based on race, and (4) his race was a but-for cause of the contractual impairment."[3] *Ray v. Am. Airlines, Inc.*, 755 F. Supp. 3d 1277, 1280 (C.D. Cal. 2024) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) and *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

BANA does not dispute that Simmons is Black or that the parties had a contractual relationship. (Doc. 25 at 6.) Simmons also plausibly alleges that his contractual rights were impaired. (*See* Doc. 16 at 4–5, 7 (alleging that BANA refused a deposit and a withdrawal and later closed his account).)

Simmons's allegations fall short, however, on causation and intent. The FAC describes a manager who treated Simmons rudely and refused transactions that another branch completed without difficulty. (*Id.* at 5, 7.) That may suggest the manager's decisions were unwarranted, but it does not suggest that race motivated them. Simmons does not allege that anyone referred to his race, or that the manager handled comparable transactions differently for customers of other races. (*See generally id.*) The alleged conversation in another language is not tied to Simmons's race in any way, and both the threat to call the police and Simmons's removal from the building are likewise race-neutral on their face. (*Id.* at 5, 7.) "To plausibly plead intentional racial discrimination, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief—he must instead allege some facts that demonstrate that race was the reason for defendant's actions." *Ray,* 755 F. Supp. 3d at 1281.

Beyond his allegation that he is Black, Simmons offers only conclusory allegations that the manager's actions had "no basis or grounds other than me Banking while Black" and were motivated by discrimination based on race. (*See generally* Doc. 16.) Such conclusory allegations are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678. Without any factual allegations permitting the plausible inference that the conduct at issue

---

[3] BANA frames the § 1981 elements under the *McDonnell Douglas* burden-shifting framework, (Doc. 25 at 6), but that framework applies to motions for summary judgment, not motions to dismiss. *Ray*, 755 F. Supp. 3d at 1280 n.2 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

was intentional discrimination, Simmons's § 1981 claim fails. *See Ray,* 755 F. Supp. 3d at 1281 ("The mere intersection of plaintiff's race and his alleged mistreatment by a defendant, in other words, is not enough to 'nudge' plaintiff's claim of racial discrimination 'across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570) (citation modified)).

**D. Leave to Amend**

Unless a court determines that a pleading cannot be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc). A finding that any amendment would be futile justifies dismissal without leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Amending the § 1983 claim would be futile. As outlined above, and as Simmons concedes, no additional facts could convert BANA's private banking decisions into action under color of state law. *See Breedlove*, 2010 WL 3000012, at *6. The § 1981 claim's deficiency, however, is factual, and could be cured by allegation of additional facts. I will therefore grant leave to amend the § 1981 claim. He may not add additional defendants or additional claims to an amended complaint without seeking and obtaining leave.

Simmons is reminded that an amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). Thus, after amendment, the original complaint is treated as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action raised in the original complaint is waived if it is not alleged in an amended complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## III. MOTION TO COMPEL

In his motion to compel, Simmons requests that I order BANA to produce a wide array of documents because they are "directly relevant to [his] claims of discrimination" and his pending motion for sanctions. (Doc. 28 at 1.) Ordinarily, parties may not seek discovery before they "have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1).

But when good cause is shown, a court may authorize expedited discovery. *Mach 1 Air Servs., Inc. v. Mainfreight, Inc.*, 2015 WL 11181334, at *1 (D. Ariz. Mar. 5, 2015). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (quotation marks omitted). "Among other factors, courts consider (1) whether a preliminary injunction is pending; (2) the breadth and purpose of the discovery request; (3) the burden on the defendants to comply with such a request; and (4) how far in advance of the typical discovery process the request was made." *Mobile v. Globalgurutech LLC*, 2023 WL 3884994, at *1 (D. Ariz. June 8, 2023). The party seeking expedited discovery "has the burden of showing good cause for the requested departure from usual discovery procedures." *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012).

Simmons has not demonstrated good cause to authorize expedited discovery. There is no preliminary injunction pending in this case and the purpose and breadth of Simmons's discovery requests do not warrant expedited discovery. Furthermore, as discussed above, I will grant BANA's motion to dismiss in its entirety. If Simmons amends his complaint, and BANA answers, I will conduct a Rule 16 Case Management Conference and set discovery deadlines. Until then, I find that ordering expedited discovery is improper.

## IV. MOTION FOR SANCTIONS

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). Simmons's motion for sanctions implicates my inherent power. Sanctions are available under that power "if the court specifically finds bad faith or conduct tantamount to bad faith." *Id.* at 994. Such conduct includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper

purpose." *Id.* The party moving for sanctions bears the burden of proof. *See Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015).

Simmons's motion alleges that BANA has engaged in "litigation interference" by closing his account and delaying availability of his paychecks after deposit. Simmons's allegations of misconduct are conclusory, and the facts he alleges—that his debit card was incorrectly declined, his account closed, and his paychecks delayed—describe the regular activities of a bank and do not warrant a finding of bad faith or conduct tantamount to bad faith. I will deny Simmons's motion for sanctions.

## V. CONCLUSION

Simmons has failed to state a § 1983 claim and amendment of that claim would be futile. Simmons also does not plausibly allege that BANA discriminated against him because of his race in violation of § 1981. I will, however, grant Simmons leave to amend his § 1981 claim.

Accordingly,

**IT IS ORDERED** denying Plaintiff Allen Simmons's Motion to Compel (Doc. 28) and Motion for Sanctions (Doc. 29).

**IT IS ORDERED** granting Defendant Bank of America, N.A.'s Motion to Dismiss (Doc. 25). Simmons's § 1983 claim is dismissed without leave to amend. Simmons's § 1981 claim is dismissed with leave to amend.

**IT IS FURTHER ORDERED** that Simmons may file an amended complaint addressing the defects identified by this Order **within 30 days** of the date of this Order. Simmons may not add additional claims or defendants to any amended complaint without first seeking, and obtaining, leave to do so.

///

///

///

///

///

**IT IS FURTHER ORDERED** that if Simmons does not file an amended complaint within 30 days of the date of this Order, the Clerk of Court shall, without further notice, dismiss this action and enter judgment accordingly.

Dated this 30th day of October, 2026.

Honorable Sharad H. Desai
United States District Judge